**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

TERRY TRAYLOR,                          :
                                        :      Civil Action No. 07-2751 (DMC)
            Plaintiff,                  :
                                        :
            v.                          :          **O P I N I O N**
                                        :
MERRILL MAIN, et al.,                   :
                                        :
            Defendants.                 :


**APPEARANCES:**

> Terry Traylor, Plaintiff <u>pro se</u>
> # 224
> Special Treatment Unit
> 30-35 Hackensack Ave.
> P.O. Box 699
> Kearny, New Jersey 07032

**CAVANAUGH**, District Judge

Plaintiff Terry Traylor, a civilly-committed person confined at the Special Treatment Unit in Kearny, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a)(1) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim

upon which relief may be granted, or because it seeks monetary relief from defendants who are immune from such relief.

**BACKGROUND**

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff was civilly committed since January 29, 2002. He claims that on or about August 6, 2002, while he was confined at the Special Treatment Unit ("STU") Annex, the staff terminated his job placement because he refused to participate in group therapy due to his pending appeal of his placement in STU. Plaintiff refused to give self-incriminating statements during treatment sessions. Plaintiff claims that the staff at STU Annex are coercing him to make self-incriminating statements by denying him privileges while confined at STU. It appears that Plaintiff is asserting a violation of his Fifth Amendment right against compelled self-incrimination and violations of his First Amendment rights not to be forced to participate in treatment, or be subject to retaliatory punishment for the exercise of his First and Fifth Amendment rights (right to refuse treatment and right against compelled self incrimination).

Plaintiff claims that because of his status as a "treatment refuser" he has lost his job, and an estimated $13,431.00 in lost wages. Plaintiff alleges that he has been denied the right to commissary and personal property.

2

Plaintiff has filed letters of grievance and remedy forms with administrative personnel in an attempt to exhaust his administrative remedies.  He brings this action against numerous defendants as follows: Merrill Main, Clinical Director of the Department of Human Services; Louis Norton, Rehabilitation/Job Counselor of Department of Human Services; Tess Kearney, Program Coordinator of the Department of Human Services; Jacquelyn Ottino, Program Coordinator of the Department of Human Services; and Paul Lagana, Assistant Superintendent of the Department of Corrections.

## DISCUSSION

**A.    Standard for *Sua Sponte* Dismissal**

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower

3

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a pro se plaintiff's "bald assertions"
or "legal conclusions."  Id.

A pro se complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d
371, 373 (3d Cir. 1981).  However, where a complaint can be
remedied by an amendment, a district court may not dismiss the
complaint with prejudice, but must permit the amendment.  Denton
v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d
229 (3d Cir. 2004)(complaint that satisfied notice pleading
requirement that it contain short, plain statement of the claim
but lacked sufficient detail to function as a guide to discovery
was not required to be dismissed for failure to state a claim;
district court should permit a curative amendment before
dismissing a complaint, unless an amendment would be futile or
inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,
108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v.
Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

**B.**   **Section 1983 Claims**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.   Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.   <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.**   **First Amendment Claim**

Plaintiff basically asserts that defendants have tried to force him to participate in SVPA treatment sessions in violation of his constitutional rights.   He argues that defendants have retaliated against him for refusing to vocally participate in the treatment program at the STU by revoking certain privileges, including his institutional job, and other privileged items.   It

5

also appears that Plaintiff's status as a "treatment refuser" impedes his advancement or progression in treatment, which may be used against him at his re-commitment hearings as an indication that Plaintiff is not sufficiently rehabilitated to re-enter society.[1]

At this preliminary stage, the Court is inclined to allow this claim to proceed where it appears that the stakes for Plaintiff's participation in treatment are so high and the deprivations incurred by refusing to participate in treatment,

---

[1]   In <u>M.X.L. v. New Jersey Dep't of Human Services/New Jersey Dep't of Corrections</u>, 379 N.J. Super. 37 (App. Div. 2005), the New Jersey Appellate Division discussed the treatment program administered at the STU and its goals:

> Decisions regarding the treatment program at the STU are based on judgments exercised by qualified professionals. <u>Youngberg v. Romero</u>, [457 U.S. 307, 322 (1982)]. In administering the clinical treatment program at STU, the emphasis is on stabilizing disruptive or dangerous behaviors. The STU Program is designed to enhance behavioral stability and pro-social functioning. Those residents whose internal behavior controls deteriorate such that they pose a threat or danger to themselves, other residents and/or STU staff are subject to increased external controls and reduction of privileges. ...

> If the State were required to provide the same prerequisites to those who are non-compliant with the treatment program, as are given to those who are participating in the program and demonstrating continued appropriate behavior, "the result would be a dramatic illustration that obduracy has the same rewards as acceptance, and so the program itself would become self-defeating, even hypocritical in the eyes of those whom it seeks to help." <u>McKune v. Lile</u>, [536 U.S. 24, 48 (2002)].

<u>M.X.L.</u>, 379 N.J. Super. at 875-76.

namely, a likely impediment to any consideration for eventual
release during re-commitment proceedings, may rise to the level
of compulsion that might violate the First Amendment. See
Hydrick v. Hunter, 466 F.3d 676 (9th Cir. 2006)(discussing the
volatility of this issue, i.e., whether the right to refuse
participation in such treatment is clearly established under the
First Amendment); Wolfe v. Penn. Dep't of Corrections, 334 F.
Supp.2d 762 (E.D. Pa. 2004)(allowing an inmate to proceed past
pre-trial motions on First Amendment grounds where the right to
parole was conditioned on participation in treatment). But see
Thorpe v. Grillo, 80 Fed. Appx. 215, 217-19, 2003 WL 22477890 (3d
Cir. 2003)(unpubl.)(a non-precedential opinion where the Third
Circuit found (1) no constitutional right to parole thereby
foreclosing the Fourteenth Amendment due process claim, and (2)
no Fifth Amendment self-incrimination violation because the
inmate was not automatically denied consideration for parole and
was not forced to incriminate himself at trial), cert. denied,
542 U.S. 924 (2004).

**D.   The Privilege Against Self-Incrimination**

Plaintiff also clearly asserts a violation of his Fifth
Amendment right against compelled self-incrimination. The Self-
Incrimination Clause of the Fifth Amendment to the United States
Constitution provides that no person "shall be compelled in any
criminal case to be a witness against himself." The Self-

Incrimination Clause applies to the States through the Fourteenth Amendment.  See Malloy v. Hogan, 378 U.S. 1, 6 (1964).  The Clause speaks of "compulsion," United States v. Monia, 317 U.S. 424, 427 (1943), and the United States Supreme Court has emphasized that the "constitutional guarantee is only that the witness not be compelled to give self-incriminating testimony." United States v. Washington, 431 U.S. 181, 188 (1977).

In McKune v. Lile, 536 U.S. 24 (2002), a sharply-divided Supreme Court held that the Fifth Amendment right against compelled self-incrimination is not violated by a prison sexual-abuse treatment program which imposes loss of various prison privileges for failure to participate in a counseling program that requires the inmates to complete an unprivileged sexual history form which details all prior sexual activities, regardless of whether such activities constitute uncharged criminal offenses.  In upholding the constitutionality of the treatment program, both the plurality and the concurring Justices noted that failure to participate did not affect eligibility for good time credits or parole.  See 537 U.S. at 38 (Kennedy, J., plurality opinion); 537 U.S. at 52-53 (O'Connor, J., concurring).

Relying upon McKune, the Superior Court of New Jersey, Appellate Division, invalidated a New Jersey statute[2] to the

---

[2] N.J.S.A. 2C:47-8 provides, in pertinent part:

a term of imprisonment imposed on a person

extent it permitted good time credits to be withheld or revoked
based upon a prisoner's refusal to disclose information about
past events for which he could face subsequent prosecution.  See
Bender v. New Jersey Dept. of Corrections, 356 N.J. Super. 432
(App. Div. 2003).  One year later, the Appellate Division
expanded upon Bender, holding that a prisoner retains his
privilege against self-incrimination until he has exhausted the
direct appeal process from his criminal conviction, that a
prisoner is not required to discuss the crimes for which he was
convicted until his petition for certification is denied by the
Supreme Court of New Jersey, and that good time credits may not
be withheld or revoked based upon the refusal to disclose
information about the crime of conviction until the direct
appeals are exhausted.  See Lewis v. Dept. of Corrections, 365
N.J. Super. 503 (App. Div. 2004).

In Chavez v. Martinez, 538 U.S. 760 (2003), the Supreme
Court indicated that violations of the prophylactic rules
safeguarding the right against compelled self-incrimination do
not amount to actual constitutional violations as required for

_____

> confined to the Adult Diagnostic and
> Treatment Center ... shall not be reduced by
> progressive time credits or credits for
> diligent application to work and other
> institutional assignments for any year or
> fractional part of a year if the person
> failed to fully cooperate with all treatment
> offered to him during that time period.

civil liability under § 1983.  See also Renda v. King, 347 F.3d
550, 559 (3d Cir. 2003)(stating that "it is the use of coerced
statements during a criminal trial ... that violates the
Constitution")(citations omitted).

   As noted above, the Court of Appeals for the Third Circuit,
has held in a non-precedential opinion that there is no Fifth
Amendment violation in forcing a prisoner to choose between
maintaining his innocence (with respect to the crime of which he
was convicted) and participating in a treatment program necessary
for parole recommendation.  See Thorpe v. Grillo, 80 Fed.Appx.
215, 2003 WL 22477890 (3d Cir. 2003) (unpubl.), cert. denied, 542
U.S. 924 (2004).[3]

_____

   [3] The Circuit Courts have taken a range of positions with
respect to the issue whether the Self-Incrimination Clause is
violated by loss of eligibility for good time credits or parole
based upon failure to admit either the crime of conviction or, in
connection with a rehabilitation program, uncharged sexual
conduct which may be criminal.  See, e.g., Searcy v. Simmons, 299
F.3d 1220 (10th Cir. 2002) (where there is no liberty interest in
good time credits, loss of eligibility for good-time credits as a
consequence of refusing to admit crime of conviction does not
violate Self-Incrimination Clause); Ainsworth v. Stanley, 317
F.3d 1 (1st Cir. 2002), cert. denied, 538 U.S. 999 (2003)
(voluntary sexual offender treatment program which requires
participant to admit crime and divulge other offenses does not
violate Self-Incrimination Clause, even though non-participation
results in denial of parole); Vinson v. Michigan Parole Board,
2006 WL 305653 (E.D. Mich. 2006) (parole board's consideration of
prisoner's refusal to accept responsibility for his crime does
not violate Self-Incrimination Clause); Sullivan v. Pennsylvania
Bd. of Probation and Parole, 2006 WL 1050526 (W.D. Pa. 2006)
(where there is no liberty interest in parole, no Fifth Amendment
violation from adverse parole decision based upon refusal to
admit to crime of conviction or other potentially criminal
behavior); Donhauser v. Goord, 314 F. Supp.2d 119, 127 (N.D.N.Y.

The Fifth Amendment right against self-incrimination remains available to a prisoner despite his conviction. <u>See</u> <u>Minnesota v. Murphy</u>, 465 U.S. 420, 426 (1984). However, "[i]t is well established that the privilege protects against real dangers, not remote and speculative possibilities." <u>Zicarelli v. New Jersey State Commission of Investigation</u>, 406 U.S. 472, 478 (1972). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." <u>Marchetti v. United States</u>, 390 U.S. 39, 53 (1968) (citations omitted). Thus, "when a witness can demonstrate a fear of prosecution, which is more than fanciful or merely speculative, he has a claim of privilege that meets constitutional muster." <u>In re Corrugated Container Antitrust Litigation</u>, 662 F.2d 875, 883 (D.C. Cir. 1981) (citing <u>In re Folding Carton Antitrust Litigation</u>, 609 F.2d 867, 871 (7th Cir. 1979)).

Here, Plaintiff is a civilly committed person and not an inmate anticipating parole. However, the Court finds this distinction to be immaterial in Plaintiff's Fifth Amendment claim

_____

2004) ("requiring plaintiff as part of the [sexual offender counseling program] to divulge a history of sexual conduct, including illegal acts for which no criminal charges have been brought, or else face a loss of good time credits, violates his Fifth Amendment privilege against self-incrimination"); <u>Boddie v. New York State Division of Parole</u>, 288 F. Supp.2d 431 (S.D.N.Y. 2003) (Fifth Amendment does not prohibit parole authorities from drawing an adverse inference from an inmate's refusal to answer questions regarding the crime of conviction).

11

because there does not appear to be any "real" possibility that Plaintiff could be subject to future prosecution for admitting his responsibility for the crimes of which he was convicted and has already served his time in prison. See, e.g., Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (where double jeopardy considerations would preclude use of admission in any future prosecution, possibility of incrimination from admission that prisoner committed the crime of conviction is no more than a "remote and speculative possibility" insufficient to trigger Fifth Amendment protection); Lewis, 365 N.J. Super. at 507 (where direct appeals are exhausted, prisoner no longer has a Fifth Amendment privilege to refuse to answer questions about the crime of conviction).

Accordingly, the possibility that Plaintiff's admissions during his treatment program could lead to further prosecution is "remote and speculative." Plaintiff no longer has a Fifth Amendment privilege against answering questions about the crime of conviction for which he has already completed his term of imprisonment.[4] Cf. Rice v. Michigan Parole Board, 2005 WL 2297463 (W.D. Mich. Sept. 21, 2005) (where no appeals or post-conviction relief proceedings remain pending, possibility of any admission to crime of conviction incriminating prisoner in the

_____

[4]  It does not appear, and Plaintiff does not allege, that he has direct appeals or post-conviction relief proceedings still pending.

12

future "is no more than a remote and speculative possibility,
which is insufficient to trigger the Fifth Amendment's protection
against self-incrimination"). Consequently, the Court finds that
Plaintiff fails to state a claim for violation of the Self-
Incrimination Clause and this claim will be dismissed
accordingly.[5]

---

[5] Should Plaintiff be able to establish that any admission
to the crimes of conviction otherwise would subject him to a real
possibility of prosecution, he may make an application to amend
his Complaint accordingly. Cf., e.g., Thomas v. Independence
Township, 2006 WL 2621094 (3d Cir. 2006) ("Even when a defendant
does not formally move for a more definite statement, the
district court has the discretion to demand more specific factual
allegations in order to protect the substance of the qualified
immunity defense and avoid subjecting government officials who
may be immune from suit to needless discovery and the other
burdens of litigation."). Plaintiff should note that when an
amended complaint is filed, the original complaint no longer
performs any function in the case and "cannot be utilized to cure
defects in the amended [complaint], unless the relevant portion
is specifically incorporated in the new [complaint]." 6 Wright,
Miller & Kane, Federal Practice and Procedure § 1476 (2d ed.
1990) (footnotes omitted). An amended complaint may adopt some
or all of the allegations in the original complaint, but the
identification of the particular allegations to be adopted must
be clear and explicit. Id. To avoid confusion, the safer course
is to file an amended complaint that is complete in itself. Id.

**CONCLUSION**

For the reasons set forth above, the Court will dismiss the Fifth Amendment claim asserting a violation of Plaintiff's right against compelled self-incrimination because Plaintiff fails to state a claim; however, the Court will allow the First Amendment claims to proceed at this time.   An appropriate order follows.

DENNIS M. CAVANAUGH
United States District Judge

Dated: 7/9/07

14